1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

2

10-60102-CR-ZLOCH/ROSENBAUM

3

4

THE UNITED STATES OF AMERICA, )
                              )
5                             )
              PLAINTIFF,      )
6                             )
        VS.                   )
7                             )
MICHAEL DEFRAND,              )
8                             )
              DEFENDANT.      )
9  _____)

10

11

12        TRANSCRIPT OF SENTENCING HAD BEFORE THE HONORABLE

13  WILLIAM J. ZLOCH, IN FORT LAUDERDALE, BROWARD COUNTY, FLORIDA,

14  ON FRIDAY, NOVEMBER 19, 2010, IN THE ABOVE-STYLED MATTER.

15

16

APPEARANCES:

17

FOR THE GOVERNMENT:   STRIDER L. DICKSON, A.U.S.A.
18                    500 E. BROWARD BLVD., 7TH FLOOR
                      FT. LAUDERDALE, FL 33301 - 954 356-7336
19

FOR THE DEFENDANT:   JOHN A. WEEKES, JR., ESQ.
20                   400 SE 8TH STREET
                     FT. LAUDERDALE, FL 33316 - 954 463-1211
21

22

                    CARL SCHANZLEH
23               OFFICIAL COURT REPORTER
                  U. S. COURTHOUSE
24             299 E. BROWARD BLVD., 202B
               FORT LAUDERDALE, FLORIDA 33301
25                 954 769-5488

```
 1   (FORT LAUDERDALE, BROWARD COUNTY, FLORIDA;  FRIDAY,

 2   NOVEMBER 19, 2010, IN OPEN COURT.)

 3             THE COURT:  GOOD MORNING.  PLEASE BE SEATED.

 4             CALLING CASE NUMBER 10-60102-CRIMINAL, UNITED STATES

 5   VERSUS MICHAEL DEFRAND.

 6             COUNSEL, WOULD YOU NOTES YOUR APPEARANCES.

 7             MR. DICKSON:  GOOD MORNING, YOUR HONOR.  STRIDER

 8   DICKSON FOR THE UNITED STATES.

 9             THE COURT:  GOOD MORNING.

10             MR. WEEKES:  GOOD MORNING, YOUR HONOR.  JOHN WEEKES

11   FOR MICHAEL DEFRAND, AND MICHAEL DEFRAND IS ON MY LEFT SIDE.

12             THE COURT:  GOOD MORNING, COUNSEL.

13             LET THE RECORD REFLECT THAT MICHAEL DEFRAND IS PRESENT

14   AND IN THE COURTROOM.

15             CAN I HAVE THE REPRESENTATIVE FROM THE PROBATION

16   OFFICE NOT HER APPEARANCE.

17             THE PROBATION OFFICER:  GOOD MORNING, YOUR HONOR.

18   JESSICA MONZANARES FROM U.S. PROBATION.

19             THE COURT:  GOOD MORNING.

20             MR. WEEKES, ARE YOU PRIVATELY RETAINED?

21             MR. WEEKES:  I AM, YOUR HONOR.

22             THE COURT:  ALL RIGHT.  THANK YOU.

23             WE ARE HERE FOR SENTENCING.

24             MR. WEEKES, HAVE YOU READ IN ITS ENTIRETY THE REVISED

25   PRESENTENCE REPORT AND THE ADDENDUM TO IT?
```

1          MR. WEEKES:  I HAVE, JUDGE.

2          THE COURT:  AND HAVE YOU DISCUSSED THOSE PAPERS FULLY

3   WITH YOUR CLIENT?

4          MR. WEEKES:  I HAVE.

5          THE COURT:  OTHER THAN WHAT HAS BEEN FILED IN WRITING

6   TITLED, "DEFENDANT'S OBJECTIONS TO PRESENTENCE INVESTIGATION

7   REPORT," ARE THERE ANY ADDITIONAL OBJECTIONS OR ANY MOTIONS

8   FROM THE DEFENSE?

9          MR. WEEKES:  NO, YOUR HONOR.

10          THE COURT:  ALL RIGHT.  THANK YOU.

11          MR. DEFRAND, HAVE YOU READ IN ITS ENTIRETY THE REVISED

12   PRESENTENCE REPORT AND THE ADDENDUM TO IT?

13          THE DEFENDANT:  YES, YOUR HONOR.

14          THE COURT:  AND HAVE YOU DISCUSSED THOSE PAPERS FULLY

15   WITH MR. WEEKES?

16          THE DEFENDANT:  YES, YOUR HONOR.

17          THE COURT:  DO YOU HAVE ANY OBJECTIONS OR ANY MOTIONS

18   TO ANYTHING CONTAINED IN THE REVISED PSR?

19          THE DEFENDANT:  NO.

20          THE COURT:  ALL RIGHT.  OTHER THAN WHAT HAS BEEN FILED

21   IN YOUR BEHALF.

22          THE DEFENDANT:  NO.

23          THE COURT:  THANK YOU.

24          AND THE GOVERNMENT HAS FILED THE GOVERNMENT'S

25   OBJECTIONS TO THE PRESENTENCE INVESTIGATION REPORT.  ANY

4

1    ADDITIONAL OBJECTIONS OR MOTIONS FROM THE GOVERNMENT?

2              MR. DICKSON:  NO, YOUR HONOR.

3              THE COURT:  ALL RIGHT.  HAVE THE OBJECTIONS BEEN

4    RESOLVED?

5              MR. WEEKES:  I BELIEVE THEY HAVE, JUDGE.

6              MR. DICKSON:  YES, YOUR HONOR.

7              THE COURT:  I JUST WANTED TO MAKE SURE.

8              ALL RIGHT.  MR. DEFRAND, IF YOU WILL STEP UP TO THE

9    PODIUM, PLEASE.

10             MICHAEL DEFRAND, YOU NOW BEING AGAIN BEFORE THIS COURT

11   ACCOMPANIED BY YOUR LAWYER, MR. JOHN WEEKES, AND YOU PREVIOUSLY

12   HAVING PLED GUILTY TO THE OFFENSES CHARGED IN COUNT ONE AND

13   THAT PORTION OF COUNT FOUR OF THE SUPERSEDING INDICTMENT, WITH

14   RESPECT TO COUNT FOUR WHICH CHARGES YOU WITH KNOWINGLY IN AND

15   AFFECTING INTERSTATE AND FOREIGN COMMERCE RECRUITING, ENTICING,

16   HARBORING, TRANSPORTING, PROVIDING, AND MAINTAINING A PERSON

17   KNOWING AND IN RECKLESS DISREGARD OF THE FACT THAT THE PERSON

18   HAD NOT ATTAINED THE AGE OF 18 YEARS, AND WOULD BE CAUSED TO

19   ENGAGE IN COMMERCIAL SEX -- IN A COMMERCIAL SEX ACT, IN

20   VIOLATION OF TITLE 18, UNITED STATES CODE, SECTIONS 1591(A)(1)

21   AND 1591(B)(2), AND THE COURT HAVING PREVIOUSLY ADJUDGED YOU

22   GUILTY OF THOSE CHARGES OF THE SUPERSEDING INDICTMENT OF THE

23   UNITED STATES OF AMERICA VERSUS MICHAEL DEFRAND, CASE NUMBER

24   10-60102-CR-ZLOCH OF THE UNITED STATES DISTRICT COURT FOR THE

25   SOUTHERN DISTRICT OF FLORIDA, AND THE COURT HAVING PREVIOUSLY

1   ADJUDGED YOU GUILTY OF THOSE OFFENSES DO YOU OR DOES ANYONE ON

2   YOUR BEHALF NOW HAVE ANY LEGAL REASON TO SHOW WHY THE SENTENCE

3   OF THE LAW SHOULD NOT BE PRONOUNCED UPON YOU?

4               MR. WEEKES:  NO, YOUR HONOR.

5               THE COURT:  NO LEGAL REASON HAVING BEEN SHOWN AS TO

6   WHY SENTENCE SHOULD NOT NOW BE IMPOSED THE COURT WILL RECEIVE

7   WHATEVER INFORMATION OR EVIDENCE MAY BE OFFERED IN EXTENUATION

8   OR IN MITIGATION OF PUNISHMENT OR WHICH IS OTHERWISE RELEVANT

9   TO THE SENTENCE TO BE IMPOSED.

10              MR. WEEKES.

11              MR. WEEKES:  JUDGE, YOU HAVE HEARD A LITTLE BIT OF

12  TESTIMONY PREVIOUSLY FROM JOHNNY SANTARO AND HIS LAWYER IN

13  REFERENCE TO THIS PTP ORGANIZATION, AND I WAS SITTING IN THE

14  BACK OF THE COURTROOM AND I WANT THE COURT TO MAYBE GIVE YOU A

15  LITTLE BIT MORE INFORMATION ABOUT THIS ORGANIZATION.

16              THIS IS NOT AN ORGANIZATION THAT STRETCHES ACROSS

17  STATE LINES.  THIS IS NOT AN ORGANIZATION THAT IS AS

18  SOPHISTICATED I WOULD INDICATE.  THIS ORGANIZATION FIRST

19  STARTED BY BASICALLY A MUSIC COMPANY AND IT PROCEEDED INTO

20  GETTING INTO, YOU KNOW, WHAT THEY WOULD CALL PROSTITUTION.

21              THESE GIRLS -- YOU PREVIOUSLY SENTENCED TWO BOTTOMS IN

22  THIS CASE WHICH ARE GIRLS WORKING AS PIMPS AS WELL, AS WELL AS

23  PIMPS.  THEY WERE ALL WORKING TOGETHER.  EACH OF THEM HAD THEIR

24  OWN I WOULDN'T SAY DUTIES BUT I WOULD INDICATE THAT THERE WAS

25  NO REAL SCHEME BEHIND IT.  THERE WAS NO TRUE LEADER.  THERE WAS

 1 | NO TRUE -- YOU KNOW, WE ARE OUT HERE TO GET A $100,000 THIS
 2 | YEAR, OR $50,000, OR -- YOU KNOW, THERE WAS NOTHING TO REALLY,
 3 | YOU KNOW, MAKE THIS A PROFITABLE TYPE BUSINESS.

 4 | IT WAS A GROUP OF PEOPLE GOING FROM HOTEL TO HOTEL TO
 5 | HOTEL ALL IN BROWARD COUNTY.  AND, YES, THEY HAD GIRLS, BUT
 6 | THESE GIRLS FOR THE MOST PART WERE ALL INDIVIDUALS THAT HAD
 7 | PREVIOUSLY BEEN PROSTITUTES THAT HAD COME INTO THE ORGANIZATION
 8 | AS YOU HEARD FROM MR. SAINTIL.

 9 | I WOULD INDICATE TO THIS COURT THAT MICHAEL DEFRAND,
10 | AS WELL AS HE HAS COOPERATED FULLY, AND I BELIEVE THE
11 | GOVERNMENT WILL INDICATE HE IS THE MOST TRUTHFUL OF ALL THE
12 | DEFENDANTS.  HE HAS EXTREMELY HELPED THEM OUT AND HAS BEEN VERY
13 | FORTHCOMING WITH ALL THE INFORMATION THAT'S BEEN GOING ON IS --
14 | WAS NOT A LEADER IN THIS ORGANIZATION.  BUT HE WAS MORE OF A --
15 | AS YOU COULD SEE, AND FROM WHAT MR. SAINTIL TALKED ABOUT HE IS
16 | MORE OF A BIG BODY.

17 | WHEN THESE GIRLS WOULD GO TO THE HOTELS HE WOULD
18 | MOSTLY DRIVE MOST OF THEM.  HE DID NOT DO THE COMPUTER ACTS IN
19 | THIS PARTICULAR CASE.  HE HAD A COMPUTER, BUT HE IS NOT REALLY
20 | PROFOUND IN DOING THE COMPUTER TYPE ACTS.  MOSTLY, AS
21 | MR. SAINTIL INDICATED TO THIS COURT, THE GIRLS WOULD DO MOST OF
22 | THE COMPUTERS, OR THERE WAS ACTUALLY A THIRD PARTY THAT WAS
23 | DOING THIS COMPUTER ADS.

24 | THEY WERE IN MR. DEFRAND'S NAME BECAUSE ALL OF THESE
25 | COMPUTER ADS HAVE WEB ADDRESSES THAT GO TO A PARTICULAR

```
 1   ADDRESS, THAT THOSE ADDRESSES ARE PAID FOR, AND OBVIOUSLY THE

 2   GIRLS WERE GIVING MR. DEFRAND CERTAIN AMOUNTS OF MONEY.  HE WAS

 3   OBVIOUSLY GETTING THE ROOMS, PAYING FOR THE ROOMS, PAYING FOR

 4   THE ADS THAT WERE DONE, CONDOMS, ET CETERA.  BUT HE WASN'T

 5   ORGANIZING AND SAYING, "YOU NEED TO GO HERE.  YOU NEED TO GO

 6   HERE.  YOU NEED TO GO HERE.  I'M DOING THESE ADS TODAY," OR,

 7   "DOING THESE ADS TOMORROW."  THEY WERE MOSTLY RUN AS THE

 8   ORGANIZATION TALKED ABOUT BEFORE MOSTLY BY THE GIRLS.

 9           AND OF THAT, JUDGE, YOU PREVIOUSLY HEARD SOME

10   TESTIMONY IN YOUR SENTENCE EARLIER FOR MR. SAINTIL WAS 120

11   MONTHS.  I WOULD -- MR. DEFRAND WOULD ASK THAT THEY ARE ALL

12   HELD AT THE SAME LEVEL.  AND I THINK MR. DEFRAND HAS NO,

13   BESIDES MINIMAL CRIMINAL HISTORY IN REFERENCE TO MARIJUANA

14   CHARGES IN WHICH WE WOULD BE ASKING THIS COURT AFTER SENTENCING

15   TO HIM TO PLACE HIM IN A DRUG PROGRAM, JUDGE.

16           THIS IS HIS ONLY TRUE REAL CONTACT WITH THE SYSTEM.

17   HE HAS NO PREVIOUS FELONIES ANYWHERE IN BROWARD OR ANYWHERE IN

18   THE STATE.  HE HAS MISDEMEANOR DRUG CHARGES, AND IN THE NORMAL

19   SITUATION -- AND I DON'T WANT TO MINIMIZE THE SITUATION AT ALL,

20   BUT IF THIS WERE A STATE COURT CASE THESE INDIVIDUALS, ALL

21   THREE WOULD BE LOOKING AT SIGNIFICANTLY LESS TIME.  OBVIOUSLY

22   THIS IS A FEDERAL COURT CASE, JUDGE, AND HE HAS A 10 YEAR

23   MINIMUM MANDATORY AND I THINK THAT THAT WOULD TECHNICALLY BE

24   APPROPRIATE IN THIS CASE.  I KNOW THE GOVERNMENT CANNOT STAND

25   UP HERE AND SAY THAT WITH MR. SAINTIL'S INVOLVEMENT.  THEY ARE
```

```
 1   ALL TOGETHER, THEY ARE ALL DOING THE EXACT SAME ACTS.
 2          THE COURT:  LET ME ASK YOU THIS BECAUSE I AM GOING TO
 3   ASK THE GOVERNMENT THE SAME QUESTION.
 4          WAS MR. DEFRAND IN THIS SCHEME MORE CULPABLE THAN
 5   MR. SAINTIL?
 6          MR. WEEKES:  I DON'T BELIEVE SO.  NO, JUDGE.  I DON'T
 7   THINK THE GOVERNMENT CAN INDICATE THAT.  I THINK THEY ALL HAD
 8   -- EACH INDIVIDUAL HAD IN ITSELF A CERTAIN AMOUNT OF GIRLS.
 9   THAT AS THE GOVERNMENT AND AS THE PSR REPORT HAS EXPLAINED,
10   THOSE GIRLS -- I WOULDN'T SAY THEY CONTROLLED THEM, BUT THOSE
11   GIRLS WERE THE ONES THAT THEY WERE -- THEY WERE EITHER GETTING
12   MONEY FROM OR MAKING SURE THEIR HOTEL ROOM.  BUT EACH ONE OF
13   THEM HAD THESE GIRLS COME TO THEM FOR NUMEROUS DIFFERENT THINGS
14   ALL THE TIME.  FOR FOOD, FOR EXAMPLE.  YOU KNOW, IT WAS -- AS
15   MR. SAINTIL SAID, AS MR. DEFRAND WILL PROBABLY INDICATE, IT WAS
16   MORE OF A STRANGE FAMILY ISSUE.  THEY WERE MOVING AS A GROUP.
17   ALL OF THEM WERE INVOLVED.  THE BOTTOMS WERE JUST AS INVOLVED,
18   AS MR. SAINTIL EXPLAINS, AS MUCH AS MR. DEFRAND'S INVOLVEMENT.
19          THE COURT:  ALL RIGHT.
20          MR. WEEKES:  IT'S A -- I SAT BACK IN THE BACK OF THE
21   COURTROOM, AND TO TRY TO EXPLANATION TO YOU THE SITUATION,
22   AND IT'S A VERY DIFFERENT SITUATION THAN IN A TRUE, I WOULD
23   INDICATE, HUMAN TRAFFICKING CASE IN WHICH WE ARE BRINGING
24   GIRLS, OR INDIVIDUALS ARE BRINGING GIRLS FROM DIFFERENT AREAS
25   AND FORCING THEM TO DO THINGS.  THIS IS A -- A STRANGE GROUP
```

1  THAT WAS ALTOGETHER THAT WAS RUNNING AN ILLEGAL BUSINESS OUT OF

2  HOTELS BUT IN AND OF ITSELF, YOU KNOW, IT WAS ALL IT WAS VERY

3  SMALL.

4            THE COURT:  SOME OF THE GIRLS WERE MINORS.

5            MR. WEEKES:  I'M SORRY?

6            THE COURT:  SOME OF THE GIRLS WERE MINORS.

7            MR. WEEKES:  SOME OF THE GIRLS WERE MINORS, WHICH

8  MR. DEFRAND, AND MR. SAINTIL, AND MR. WILSON ALL KNEW PEOPLE.

9            THE COURT:  I MEAN, FORCING A WOMAN TO DO THIS UNDER

10  ANY CIRCUMSTANCES IS A PROBLEM, BUT ESPECIALLY WHEN YOU ARE

11  DEALING WITH MINORS.

12            MR. WEEKES:  CORRECT.

13            THE COURT:  GO AHEAD.

14            MR. WEEKES:  THEREFORE, JUDGE, THAT'S WHY I WOULD BE

15  ASKING, AND MY RECOMMENDATION -- I KNOW HIS BOTTOM IS 188

16  MONTHS.  I WOULD ASK YOU TO GIVE A VARIANCE ON THAT, JUDGE, AND

17  COME BELOW TO 120, JUDGE, WHICH IS WHAT YOU GAVE MR. SAINTIL.

18  I THINK THAT'S APPROPRIATE IN THIS CASE.

19            MR. DEFRAND HAS BEEN VERY FORTHCOMING WITH THE

20  GOVERNMENT.  AS LONG AS -- IF I BRING YOU BACK TO WHEN WE WERE

21  HERE FOR TRIAL, THAT DAY, JUDGE.  MR. DEFRAND WAS VERY

22  INSTRUMENTAL IN SPEAKING WITH MR. WILSON AS WELL WHEN THIS CASE

23  WAS READY TO GO TO TRIAL.

24            MR. SAINTIL HAD DECIDED TO TAKE A PLEA.  MR. DEFRAND

25  DECIDED TO TAKE A PLEA.  MR. WILSON WAS STILL DOWNSTAIRS.  HE

1  TOOK A PLEA, AND THEN YOU CAME BACK WITH MR. WILSON LATER ON IN

2  THE AFTERNOON.  AFTER THAT MR. DEFRAND HAS BEEN EXTREMELY

3  COOPERATIVE AND TOLD ALL THE INFORMATION IN REFERENCE TO THIS

4  CASE TO THE GOVERNMENT.  HE HAS A MINIMAL CRIMINAL HISTORY,

5  JUDGE.  HE DOES SCORE A CRIMINAL HISTORY POINT OF THREE, BUT

6  THAT'S SMALL MARIJUANA CHARGES AND I BELIEVE THAT THIS COURT

7  SHOULD GO BELOW THE 188 MONTHS AND ALLOW HIM TO GET 120 MONTHS.

8        THE COURT:  ALL RIGHT.  THANK YOU, MR. WEEKES.

9        MR. DEFRAND WHAT WOULD YOU LIKE TO SAY?

10        THE DEFENDANT:  I'M REAL SORRY FOR ALL OF THIS.

11        THE COURT:  WHY ARE YOU GETTING INVOLVED IN THIS?

12        THE DEFENDANT:  I HUNG AROUND WITH THE WRONG CROWD.

13        THE COURT:  ALL RIGHT.  THANK YOU.

14        ANYTHING ELSE FROM THE DEFENSE?

15        MR. WEEKES:  JUST IF I COULD ASK MR. DEFRAND A -- HE

16  IS A BIT NERVOUS.

17        THE COURT:  GO AHEAD.  TAKE YOUR TIME.

18        MR. WEEKES:  PRIOR TO GETTING INVOLVED IN THIS,

19  MICHAEL, WHAT WERE YOUR ASPIRATIONS?  WHAT DID YOU WANT TO DO

20  FOR A LIVING?

21        THE DEFENDANT:  I WANTED TO BE A PROMOTER, OUT

22  PROMOTING MAKING MUSIC AND STUFF LIKE THAT.

23        MR. WEEKES:  IS THAT WHAT PTP ORIGINALLY STARTED OUT

24  AS?

25        THE DEFENDANT:  YEAH.

 1          MR. WEEKES:  HOW DID YOU GUYS -- I MEAN, YOU GUYS,

 2  MR. SAINTIL AND MR. WILSON, HOW DO YOU KNOW THESE INDIVIDUALS?

 3          THE DEFENDANT:  I GREW UP WITH SAINTIL.

 4          MR. WEEKES:  WHEN YOU SAY YOU GREW UP.  YOU WERE IN

 5  THE SAME HIGH SCHOOL?  DOES IT GO ALL THE WAY BACK AS TO

 6  ELEMENTARY SCHOOL?

 7          THE DEFENDANT:  HIGH SCHOOL.

 8          MR. WEEKES:  OKAY.  AND YOU GUYS WERE DOING THIS

 9  PROMOTING ALL ACROSS BROWARD COUNTY?

10          THE DEFENDANT:  NOT ALL AROUND BUT LIKE LOCAL PLACES

11  IN BROWARD.

12          MR. WEEKES:  OKAY.  HOW DID IT EVOLVE, I THINK IS WHAT

13  THE COURT IS REALLY ASKING, HOW DID IT EVOLVE FROM PROMOTING TO

14  ALL OF A SUDDEN PROSTITUTION?

15          THE DEFENDANT:  BEING THAT THE ROOM -- PARTYING, AND

16  EVERYTHING, JUST MADE US START LOOKING INTO JUST GETTING GIRLS

17  AND STUFF, AND WE JUST STARTED TRYING NEW STUFF.

18          MR. WEEKES:  YOU MEAN WHEN YOU WERE AT ROOMS.  IN

19  OTHER WORDS, YOU GUYS WOULD GET HOTEL ROOMS PRIOR TO ANY OF

20  THIS PROSTITUTION.

21          THE DEFENDANT:  YEAH.

22          MR. WEEKES:  AND WHEN YOU GOT AT THE HOTEL ROOMS WERE

23  THERE GIRLS ALONG WITH YOURSELVES THAT INDICATED YOU GUYS COULD

24  MAKE MONEY BY DOING THIS PROSTITUTION BUSINESS?

25          THE DEFENDANT:  YEAH.  THERE WAS GIRLS ALL THE TIME.

1           MR. WEEKES:  ALL RIGHT.  AND IS THAT HOW IT EVOLVED?

2           THE DEFENDANT:  YEAH, BASICALLY.

3           MR. WEEKES:  OKAY.  IN REFERENCE TO THE COMPUTER.  WE

4  TALKED ABOUT CERTAIN COMPUTER ASPECTS.  HOW MUCH DID YOU KNOW

5  ABOUT COMPUTERS AND HOW MUCH DID YOU DEAL WITH THE COMPUTER

6  SITUATION?

7           THE DEFENDANT:  NOT A LOT.

8           MR. WEEKES:  WHAT DID YOU SPECIFICALLY DO WITH THE

9  COMPUTERS?

10          THE DEFENDANT:  I USED TO BUY THE COMPUTERS.

11          MR. WEEKES:  AND WHO WERE THE INDIVIDUALS, MEN,

12  FEMALES, WHATEVER THEY WERE, WHO ACTUALLY PUT THE ADS OUT

13  THERE?

14          THE DEFENDANT:  MIRITZA.

15          MR. WEEKES:  OKAY.  AND ONCE THOSE ADS WERE PLACED DID

16  YOU HAVE ANY OTHER CONTACT IN REFERENCE TO THAT OR DID YOU CALL

17  INDIVIDUALS TO SET UP DATES, OR DID YOU MOSTLY JUST GET THE

18  ROOM?  WHAT DID YOU DO?

19          THE DEFENDANT:  I WAS BASICALLY A DRIVER.

20          MR. WEEKES:  WERE YOU SECURITY MOST OF THE TIME FOR

21  THESE GIRLS?

22          THE DEFENDANT:  YEAH.  SOMETIME I'M SECURITY, WATCH

23  OUT FOR THEM.

24          MR. WEEKES:  ANYTHING ELSE YOU WANT TO TELL THE JUDGE

25  IN REFERENCE TO YOUR INVOLVEMENT IN THIS?

```
 1            THE DEFENDANT:  YOUR HONOR, I WAS BASICALLY A DRIVER.

 2  I JUST WATCH OUT OVER THE GIRLS AND HELP THEM.

 3            MR. WEEKES:  YOUR HONOR, NOTHING FURTHER.

 4            THE COURT:  NOW, THE PSR -- YOU SAY THAT YOU WERE

 5  BASICALLY A DRIVER, MR. DEFRAND, CORRECT?

 6            THE DEFENDANT:  YES, SIR.  DRIVER AND SECURITY.  I

 7  USED TO GET A LOT OF CONDOMS AND STUFF FOR THE GIRLS.

 8            THE COURT:  DID YOU EVER THREATEN ANY OF THE WOMEN?

 9            THE DEFENDANT:  YES.

10            THE COURT:  WHY DID YOU THREATEN THEM?

11            THE DEFENDANT:  IT WAS NOT LIKE A THREAT LIKE TO DO

12  ANYTHING.

13            THE COURT:  WHY DID YOU THREATEN THEM?

14            THE DEFENDANT:  JUST TO SCARE THEM UP.

15            THE COURT:  TO SCARE THEM UP FOR WHAT?

16            THE DEFENDANT:  SO THEY COULD JUST GO ON CALLS.

17            THE COURT:  SO WHY ARE YOU DOING THAT TO A WOMAN?

18            THE DEFENDANT:  I'M SORRY, YOUR HONOR.  I WAS WRONG

19  FOR IT.

20            THE COURT:  DO YOU THINK THAT IS RIGHT --

21            THE DEFENDANT:  NO, YOUR HONOR.

22            THE COURT:  -- TO GO AROUND BERATING A WOMAN?

23            THE DEFENDANT:  NO, YOUR HONOR.

24            THE COURT:  ALL RIGHT.  ANYTHING ELSE FROM THE DEFENSE

25  BEFORE I HEAR FROM THE GOVERNMENT?
```

 1          MR. WEEKES:  JUDGE, I WOULD JUST INDICATE THAT

 2  MR. DEFRAND AND FROM THE ENTIRE PROCESS HAS BEEN EXTREMELY

 3  TRUTHFUL.  HE IS TRUTHFUL TO THE GOVERNMENT, HE IS TRUTHFUL TO

 4  THIS COURT.  THOSE OTHER INDIVIDUALS THAT ARE IN THIS CASE THAT

 5  -- I CAN'T SAY THAT.  AND MR. DEFRAND CAN STAND UP HERE, AND I

 6  CAN SAY IN THE PSR REPORT AND SAY THAT THOSE THINGS DIDN'T

 7  HAPPEN.  HE'S TELLING THIS COURT EXACTLY WHAT HAPPENED, AND I

 8  THINK HE SHOULD BE HELD TO THE SAME ACCOUNTABILITY AS OTHER

 9  INDIVIDUALS.

10          THE COURT:  I UNDERSTAND.

11          MR. WEEKES:  THAT'S WHY WE ARE ASKING FOR THE 120

12  MONTHS.

13          THE COURT:  ALL RIGHT.  THANK YOU.

14          WHAT SAY THE UNITED STATES?

15          MR. DICKSON:  YOUR HONOR, WE ARE RECOMMENDING A LOW

16  END OF THE GUIDELINE SENTENCE IN THIS CASE.

17          TO ANSWER YOUR QUESTION ABOUT WHO IS MORE CULPABLE IN

18  THE GROUP.  MR. DEFRAND, AND MR. WILSON, AND MR. SAINTIL WERE

19  ALL, FROM THE GOVERNMENT'S PERSPECTIVE, EQUALLY CULPABLE IN THE

20  SENSE THAT THEY ALL HAD -- WHILE THEY WERE PART OF ONE LARGE

21  GROUP, THEY ALL HAD THEIR INDIVIDUAL GROUPS OF WOMEN THAT THEY

22  WERE WORKING WITH.  SO THEY ARE ALL EQUALLY CULPABLE IN THAT

23  SENSE.  AND AGAIN, I THINK JUST -- YOUR HONOR, I THINK THE LOW

24  END OF THE GUIDELINE SENTENCE IS APPROPRIATE IN THIS CASE.

25          THE COURT:  MR. DEFRAND'S SCORE IS HIGHER THAN

 1  MR. SAINTIL BECAUSE OF THE PRIOR CRIMINAL CONVICTIONS THAT HE

 2  HAS FOR WHICH HE RECEIVED POINTS.

 3           MR. DICKSON:  YOUR HONOR, HE SCORES HIGHER ACTUALLY

 4  BECAUSE OF THE POINTS ASSIGNED TO THE SUBSTANTIVE OFFENSE --

 5           THE COURT:  CATEGORY --

 6           MR. DICKSON:  -- TO WHICH HE PLED GUILTY.

 7           THE COURT:  RIGHT.

 8           MR. DICKSON:  RIGHT.

 9           THE COURT:  BUT IN ADDITION TO HIS PRIOR CRIMINAL

10  RECORD WHICH ADDS UP GREATER THAN WHAT SAINTIL HAD.

11           MR. DICKSON:  MR. SANTARO AND MR. DEFRAND HAD THE SAME

12  PRIOR CRIMINAL HISTORY POINTS.

13           THE COURT:  BUT THEY DID NOT HAVE THE SAME PRIOR

14  CRIMINAL RECORD.

15           MR. DICKSON:  NO, NOT THE EXACT -- NO, YOUR HONOR.

16           THE COURT:  ALL RIGHT.  THE COURT BEING FULLY INFORMED

17  OF THE FACTS AND CIRCUMSTANCES SURROUNDING THE CRIME AND NO

18  LEGAL REASON HAVING BEEN SHOWN AS TO WHY SENTENCE SHOULD NOT

19  NOW BE IMPOSED, AFTER CONSIDERATION OF STATEMENTS BY ALL

20  PARTIES AND A COMPLETE REVIEW OF THE ENTIRE REVISED PRESENTENCE

21  REPORT WHICH CONTAINS THE ADVISORY GUIDELINE COMPUTATION AND

22  RANGE WHICH THIS COURT HAS CONSIDERED, THE COURT HAS ALSO

23  CONSIDERED ALL OF THE STATUTORY FACTORS.

24           THE COURT FINDS THAT A SENTENCE AT THE LOW END OF THE

25  ADVISORY GUIDELINE RANGE SHALL PROVIDE APPROPRIATE PUNISHMENT

1  AND WILL DETER FUTURE CRIMINAL CONDUCT ON THE PART OF

2  MR. DEFRAND.

3       FURTHER, IT IS THE FINDING OF THE COURT THAT

4  MR. DEFRAND IS NOT ABLE TO PAY BOTH A FINE AS WELL AS

5  RESTITUTION.  THEREFORE, NO FINE SHALL BE ORDERED.  HOWEVER,

6  RESTITUTION SHALL BE IMPOSED.

7       ACCORDINGLY, PURSUANT TO THE SENTENCING REFORM ACT OF

8  1984, IT IS THE JUDGMENT OF THE COURT AND THE SENTENCE OF THE

9  LAW THAT MR. MICHAEL DEFRAND IS HEREBY COMMITTED TO THE CUSTODY

10  OF THE UNITED STATES BUREAU OF PRISONS TO BE IMPRISONED FOR A

11  TERM OF 188 MONTHS.

12       THIS TERM CONSISTS OF TERMS OF 188 MONTHS AS TO EACH

13  OF COUNTS ONE AND FOUR OF THE SUPERSEDING INDICTMENT TO BE

14  SERVED CONCURRENTLY WITH EACH OTHER.

15       IT IS FURTHER ORDERED THAT PURSUANT TO 18, USC,

16  SECTION 3664(D)(5), THE VICTIMS LOSSES ARE NOT YET

17  ASCERTAINABLE.  THEREFORE, THE COURT SHALL SET A DATE FOR THE

18  FINAL DETERMINATION OF THE VICTIMS LOSSES NOT TO EXCEED 90 DAYS

19  AFTER SENTENCING.

20       UPON RELEASE FROM IMPRISONMENT MR. DEFRAND SHALL BE

21  PLACED ON SUPERVISED RELEASE FOR A TERM OF -- IS THE MAXIMUM OF

22  SUPERVISED RELEASE FIVE YEARS?

23       MR. DICKSON:  NOT FOR MR. DEFRAND.

24       THE COURT:  IT IS FIVE TO LIFE?

25       MR. DICKSON:  IT IS FIVE TO LIFE.  YES, YOUR HONOR.

 1          THE COURT:  UPON RELEASE FROM IMPRISONMENT MR. DEFRAND
 2  SHALL BE PLACED ON SUPERVISED RELEASE FOR A TERM OF 15 YEARS.
 3  THIS TERM CONSISTS OF FIVE YEARS AS TO COUNT ONE AND 1O YEARS
 4  AS TO COUNT FOUR -- EXCUSE ME.  LET ME BACK UP FOR JUST A
 5  MINUTE.

 6          UPON RELEASE FROM IMPRISONMENT MR. DEFRAND SHALL BE
 7  PLACED ON SUPERVISED RELEASE FOR A TERM OF 1O YEARS, 1O YEARS.
 8  THIS TERM CONSISTS OF FIVE YEARS AS TO COUNT ONE, AND 1O YEARS
 9  AS TO COUNT FOUR, ALL SUCH TERMS TO RUN CONCURRENTLY WITH EACH
10  OTHER.

11          WITHIN 72 HOURS OF RELEASE FROM THE CUSTODY OF THE
12  BUREAU OF PRISONS, MR. DEFRAND SHALL REPORT IN PERSON TO THE
13  PROBATION OFFICE IN THE DISTRICT TO WHICH HE IS RELEASED.

14          WHILE ON SUPERVISED RELEASE HE SHALL NOT COMMIT ANY
15  CRIMES, HE SHALL BE PROHIBITED FROM POSSESSING A FIREARM OR
16  ANOTHER DANGEROUS DEVICES, HE SHALL NOT POSSESS A CONTROLLED
17  SUBSTANCE, HE SHALL COOPERATE IN THE COLLECTION OF DNA, AND
18  SHALL COMPLY WITH THE STANDARD CONDITIONS OF SUPERVISED RELEASE
19  THAT HAVE BEEN ADOPTED BY THIS COURT INCLUDING THE FOLLOWING
20  SPECIAL CONDITIONS.

21          ONE, THERE SHALL BE A MENTAL HEALTH TREATMENT
22  REQUIREMENT; TWO, THERE SHALL BE A SUBSTANCE ABUSE TREATMENT
23  REQUIREMENT; THREE, THERE SHALL BE A FINANCIAL DISCLOSURE
24  REQUIREMENT; FOUR, THERE SHALL BE A SELF-EMPLOYMENT
25  RESTRICTION; FIVE, THERE SHALL BE A PERMISSIBLE SEARCH

 1  REQUIREMENT; SIX, THERE SHALL BE A NO CONTACT WITH MINORS

 2  REQUIREMENT; SEVEN, THERE SHALL BE A NO CONTACT WITH MINORS IN

 3  EMPLOYMENT; EIGHT, THERE SHALL BE A NO INVOLVEMENT IN YOUTH

 4  ORGANIZATIONS; NINE, THERE SHALL BE A SEX OFFENDER TREATMENT

 5  REQUIREMENT; TEN, THERE SHALL BE A RESTRICTED FROM POSSESSION

 6  OF SEXUAL MATERIALS REQUIREMENT; ELEVEN, THERE SHALL BE AN ADAM

 7  WALSH ACT SEARCH CONDITION REQUIREMENT; AND, 12, THERE SHALL BE

 8  A SEX OFFENDER REGISTRATION REQUIREMENT, ALL AS NOTED MORE

 9  SPECIFICALLY IN PART G OF THE REVISED PRESENTENCE REPORT.

10          IT IS FURTHER ORDERED THAT MR. DEFRAND SHALL PAY

11  IMMEDIATELY TO THE UNITED STATES A SPECIAL ASSESSMENTS OF $100

12  AS TO EACH OF COUNTS ONE AND FOUR FOR A TOTAL OF $200.

13          FORFEITURE OF MR. DEFRAND'S RIGHT, TITLE, AND INTEREST

14  IN CERTAIN PROPERTY IS HEREBY ORDERED CONSISTENT WITH THE PLEA

15  AGREEMENT.

16          THE UNITED STATES SHALL SUBMIT A PROPOSED ORDER OF

17  FORFEITURE WITHIN THREE DAYS OF THIS PROCEEDING.

18          DOES THAT COVER EVERYTHING, MISS PROBATION OFFICER?

19          THE PROBATION OFFICER:  YES, YOUR HONOR, IT DOES.

20          THE COURT:  THE COURT ADOPTS THE FACTUAL FINDINGS AND

21  ADVISORY GUIDELINE COMPUTATION, THE TOTAL OFFENSE LEVEL, THE

22  CRIMINAL HISTORY CATEGORY, THE IMPRISONMENT RANGE, THE

23  SUPERVISED RELEASE RANGE, AND THE FINE RANGE AS SET FORTH IN

24  THE REVISED PSR.

25          NO FINE HAS BEEN IMPOSED FOR THE REASONS PREVIOUSLY

 1  STATED.   RESTITUTION SHALL BE ORDERED ONCE THE AMOUNT IS

 2  DETERMINED.

 3       THE SENTENCE IS WITHIN THE ADVISORY GUIDELINE RANGE,

 4  THAT RANGE DOES NOT EXCEED 24 MONTHS AND THE COURT FINDS NO

 5  REASON TO DEPART OR VARY FROM A SENTENCE CALLED FOR -- LET ME

 6  BACK UP FOR JUST A MINUTE.   THAT RANGE DOES EXCEED 24 MONTHS,

 7  AND THE SENTENCE HAS BEEN IMPOSED FOR THE REASONS PREVIOUSLY

 8  STATED.

 9       THE COURT FINDS NO REASON TO DEPART OR VARY FROM A

10  SENTENCE CALLED FOR BY THE GUIDELINES.

11       MR. WEEKES, DOES THE DEFENSE HAVE ANY OBJECTIONS TO

12  ANY OF THE FINDINGS OF FACTS OR CONCLUSIONS OF LAW MADE BY THE

13  COURT HERE THIS MORNING?

14       MR. WEEKES:  NO, YOUR HONOR.

15       THE COURT:  MR. DEFRAND, DO YOU HAVE ANY?

16       THE DEFENDANT:  NO.

17       THE COURT:  PARDON?

18       THE DEFENDANT:  NO.

19       THE COURT:  ANY FROM THE GOVERNMENT?

20       MR. DICKSON:  NO, YOUR HONOR.

21       THE COURT:  DOES THE DEFENSE HAVE ANY OBJECTION TO THE

22  MANNER OR PROCEDURE IN WHICH SENTENCE HAS BEEN IMPOSED OR THAT

23  THIS HEARING HAS BEEN CONDUCTED, MR. WEEKES?

24       MR. WEEKES:  NO, YOUR HONOR.

25       THE COURT:  MR. DEFRAND?

1          THE DEFENDANT:  NO.

2          THE COURT:  ANY FROM THE GOVERNMENT?

3          MR. DICKSON:  NO, YOUR HONOR.

4          THE COURT:  MR. DEFRAND, THE COURT NOW INFORMS YOU

5   THAT YOU HAVE 14 DAYS FROM TODAY WITHIN WHICH TO APPEAL THE

6   SENTENCE IMPOSED.  YOUR FAILURE TO APPEAL WITHIN THE 14-DAY

7   TIME PERIOD SHALL CONSTITUTE A WAIVER OF YOUR RIGHT TO APPEAL.

8          IF YOU ARE WITHOUT FUNDS WITH WHICH TO RETAIN A LAWYER

9   TO ASSIST YOU IN ANY APPEAL THE COURT WOULD APPOINT A LAWYER

10  FOR YOU UPON A SHOWING THAT YOU ARE INDIGENT AND UNABLE TO

11  AFFORD A LAWYER.

12         IF YOU WERE DECLARED INDIGENT THE CLERK OF THE COURT

13  WOULD FILE A NOTICE OF APPEAL ON YOUR BEHALF IF YOU REQUESTED

14  THE CLERK OF THE COURT TO DO SO.

15         ANYTHING ELSE FROM THE DEFENSE?

16         MR. WEEKES:  YES, YOUR HONOR.  I WOULD JUST ASK TWO

17  THINGS.

18         ONE, OBVIOUSLY YOU HAVE SEEN FROM MR. DEFRAND'S

19  PREVIOUS HISTORY, JUDGE, THAT HE HAS A DRUG ISSUE.  I WOULD ASK

20  THIS COURT TO IMPOSE A DRUG PROGRAM WHILE HE IS IN THE FEDERAL

21  PRISON SYSTEM, AND ALSO ASK THIS COURT IF YOU COULD RECOMMEND

22  FOR HIM TO STAY IN -- DOWN IN THE SOUTHERN DISTRICT, JUDGE, OR

23  SOMEWHERE CLOSE.

24         THE COURT:  ANYTHING ELSE FROM THE DEFENSE?

25         MR. WEEKES:  NO, YOUR HONOR.  THANK YOU.

 1          THE COURT:  ALL RIGHT.  THE COURT RECOMMENDS A FEDERAL

 2  FACILITY IN SOUTH FLORIDA, AND THE COURT RECOMMENDS THE 500

 3  HOUR DRUG ABUSE PROGRAM.

 4          IF YOU CAN GET INTO THAT PROGRAM, MR. DEFRAND, AND

 5  SUCCESSFULLY COMPLETE IT, IT HAS THE POTENTIAL TO LOWER YOUR

 6  SENTENCE.

 7          SO ANYTHING ELSE FROM THE DEFENSE?

 8          MR. WEEKES:  THANK YOU VERY MUCH, YOUR HONOR.

 9          THE COURT:  FROM THE GOVERNMENT?

10          MR. DICKSON:  I WOULD JUST MOVE TO DISMISS COUNT FIVE,

11  YOUR HONOR.

12          THE COURT:  SO ORDERED.

13          THE COURT IS IN RECESS.

14          MR. DEFRAND, YOU ARE REMANDED TO THE CUSTODY OF THE

15  UNITED STATES MARSHAL.

16                          - - -

17

18

19

20

21

22

23

24

25

1

2

3                       C E R T I F I C A T E

4

5

6   UNITED STATES OF AMERICA

7   SOUTHERN DISTRICT OF FLORIDA

8

9

10        I, CARL SCHANZLEH, OFFICIAL COURT REPORTER OF THE UNITED

11  STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF FLORIDA, DO

12  HEREBY CERTIFY THAT THE FOREGOING 21 PAGES CONSTITUTE A TRUE

13  TRANSCRIPT OF THE PROCEEDINGS HAD BEFORE THE SAID COURT HELD IN

14  THE CITY OF FORT LAUDERDALE, FLORIDA, IN THE MATTER THEREIN

15  STATED.

16        IN TESTIMONY WHEREOF, I HEREUNTO SET MY HAND ON THIS 2ND

17  DAY OF NOVEMBER 2011.

18

19                              /S/CARL SCHANZLEH
                                CARL SCHANZLEH, RPR-CM
20                              OFFICIAL FEDERAL COURT REPORTER
                                299 EAST BROWARD BLVD., 202B
21                              FORT LAUDERDALE, FL  33301
                                TELEPHONE 954/769-5488
22

23

24

25